Case 10-39670    Filed 07/26/10    Doc 23

FILED
July 26, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002805237

6

RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: rb@lnbyb.com; tma@lnbyb.com

Proposed Attorneys for Chapter 11 Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## (SACRAMENTO DIVISION)

| | |
|---|---|
| In re:<br><br>MATTERHORN GROUP, INC.,<br><br>    Debtor.<br>_____<br><br>VITAFREZE FROZEN CONFECTIONS, INC.,<br><br>    Debtor.<br>_____<br><br>DELUXE ICE CREAM COMPANY,<br><br>    Debtor.<br>_____<br><br>☒ Affects ALL DEBTORS<br>☐ Affects only MATTERHORN GROUP, INC.<br>☐ Affects only VITAFREZE FROZEN<br>         CONFECTIONS, INC.<br>☐ Affects only DELUXE ICE CREAM COMPANY | [Proposed] Lead Case No. 10-39672 (MSM)<br>[Proposed] Jointly Administered with Case Nos. 10-39664 (MSM), and 10-39670 (MSM)[1]<br><br>DC No. LNB-4<br><br>Chapter 11 Cases<br><br>**DECLARATION OF JENNIFER K. LOVING IN SUPPORT OF DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO PROVIDE ADEQUATE ASSURANCE OF PAYMENT TO UTILITY COMPANIES PURSUANT TO SECTION 366(c) OF THE BANKRUPTCY CODE**<br><br>Hearing:<br>Date:     TBD<br>Time:     TBD<br>Place:    Department A<br>          Judge Michael S. McManus<br>          Courtroom No. 28<br>          Floor No. 7<br>          Robert T. Matsui Courthouse<br>          501 I Street<br>          Sacramento, CA 95814 |

---

[1] Motion for Joint Administration pending.

# DECLARATION OF JENNIFER K. LOVING

I, Jennifer K. Loving, hereby declare as follows:

1. I am over 18 years of age. Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, I could and would testify competently thereto.

2. I have a Bachelor of Science in accounting degree from West Virginia State University. I am the Chief Financial Officer of Matterhorn Group, Inc. ("MGI"), Vitafreze Frozen Confections, Inc. ("Vitafreze"), and Deluxe Ice Cream Company ("Deluxe"), the debtors and debtors in possession in the above-captioned (proposed) jointly administered Chapter 11 bankruptcy cases (collectively, the "Debtors"). I have held such position since 2007. I have no ownership interest in the Debtors. Prior to that joining the Debtors, (a) in 1994 and 1995, I was a Staff Accountant at Wheat First Butcher Singer, (b) in 1995 through 2001, I was the Corporate Assistant Controller at James River Coal Corp., (c) in 2001 and 2002, I was a Corporate Account Manager at VMS, Inc., (d) in 2002 through 2005, I was the Controller at Heritage Country Club, (e) in 2005 through 2007, I was the Chief Financial Officer of Red Rock Country Club.

3. I make this Declaration in support of the Debtors' motion for entry of an order authorizing the Debtors to provide adequate "assurance of payment" to certain utility companies pursuant to Section 366(c) of the Bankruptcy Code. Unless otherwise stated, all capitalized terms herein have the same meanings as in the Motion and the Memorandum of Points and Authorities filed in support thereof.

4. In the ordinary course the Debtors' business, the Debtors' create business books and records (the "Books and Records") regarding, among other things, the Debtors' assets, depreciation of assets, liabilities, income, expenses, and transactions. More particularly, the Debtors' Books and Records are made at or near the time by, or from information transmitted by, a person with knowledge, in the ordinary course of the Debtors' business and as a regular practice of the Debtors' business. All information contained herein regarding gross revenues, loan balances, employees, equity holders, asset valuations, and bank accounts, is based on (1) the

Debtors' Books and Records, the preparation of which I am materially involved in and oversee and the contents of which I am readily familiar, (2) my personal knowledge, and/or (3) my opinion.

5. On July 26, 2010 (the "Petition Date"), the Debtors each filed voluntary petitions under Chapter 11 of 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). The Debtors continue to operate their business, manage their financial affairs, and operate their bankruptcy estates as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

6. MGI was formed in 2004 as a vehicle to "roll-up" frozen novelty manufacturing companies in the Western United States. The initial step in this strategy was MGI's acquisition of Vitafreze, Deluxe, and Matterhorn Ice Cream Company ("Matterhorn"),[2] each of which became wholly owned subsidiaries of MGI. The Debtors share common senior management and prepare consolidated financial statements. As a result of these acquisitions, by 2005, the Debtors had (1) established themselves as high-quality, high-service private label manufacturers with a strong Western United States customer base, and (2) become one of the dominant producers of ice cream novelties in the Western United States.

In 2006, in an effort to improve operations and profitability, MGI (1) closed Matterhorn's manufacturing plant in Caldwell, Idaho and consolidated its manufacturing into Vitafreze, located in Sacramento, California, and Deluxe, located in Salem, Oregon, and (2) took aggressive steps to restructure its remaining operations to reduce overhead and reposition MGI with its customers and suppliers. The Debtors' administrative office is located in Las Vegas, Nevada. The manufacturing facilities and administrative are collectively referred to herein as the "Locations."

7. At present, the Debtors, which have approximately 31 non-union employees and 226 union employees, are collectively one of the largest independent producers of ice cream and water-ice novelty products in the United States. The Debtors manufacture (1) self-branded products for grocery retailers, (2) products from brand licenses held by the Debtors, such as Mike

---

[2] Matterhorn is also a wholly owned subsidiary of MGI. Matterhorn is not operating and has not filed a bankruptcy case.

and Ike™, HotTamales™, Zours™, and Crystal Light™ popsicles, (3) co-branded products, and (4) the Debtors' own products, including the Debtor's Oh My! Goodness™ branded products. The Debtors' customers include the largest big-box grocery retailers, club stores, and independent cooperative distribution companies in the United States, such as Wal*Mart, Sam's Club, Giant Eagle, Kroger, Stater Brothers, Albertsons, Winco Foods, Raley's, Save Mart Supermarkets, Safeway, Smart & Final, the Schwan Food Company, and Western Family. The Debtors also sell to various retailers in Mexico.

8. The Debtors' primary secured creditor is Key Bank, N.A. (the "Bank"). As of the Petition Date, pursuant to that certain Amended and Restated Revolving Credit and Term Loan Agreement (as amended) (the "Loan Documents"), the Debtors owed the Bank approximately $1,249,983 on a term loan (the "Term Loan") and approximately $9,314,954 on a revolving line of credit (the "Line" and together with the Term Loan, the "Bank Loans") for a total of approximately $10,564,937. The Bank Loans are allegedly secured by first priority liens on substantially all of the Debtors' assets, including the Debtors' cash collateral. Under the Loan Documents, (1) the amount available under the Line is based on 80% of eligible accounts receivable and 60% of eligible inventory, subject to periodic step downs in total maximum availability, which is currently $9.5 million, and (2) the Bank Loans mature on July 1, 2011.

9. In addition to the Bank, the UCC-1 lien reports obtained by the Debtors from Idaho, the state in which the Debtors are incorporated, indicate that additional other entities (the "Other Secured Parties") may have liens upon certain of the Debtors' assets. Based on a review of the UCC Reports, I believe that the liens of the Other Secured Parties only relate to particular equipment leased or purchased by the Debtors. Therefore, I do not believe that the liens of the Other Secured Parties extend to the Debtors' cash collateral.

10. During the period of 2007 through 2009, the Debtors gross revenues increased substantially from approximately $42,564,029 in 2007, to approximately $47,986,399 in 2008, to approximately $54,436,328 in 2009. Unfortunately, due to expansion into new product categories, increased costs related thereto, a delayed selling season due to unusually cool

temperatures in the Debtors geographical market and the continued need to make capital expenditures to maintain the Debtors' manufacturing facilities, these increases in gross revenue did not result in corresponding increases in net income and liquidity. Instead, based on the foregoing and seasonal fluctuations in the Debtors' business and borrowing limits under the Loan Documents, the Debtors found themselves in a cash crunch and were unable to meet their funding needs solely from advances made by the Bank. As a result, Pacific Mezzanine Fund, L.P. and CC&B Holdings, Inc., two of MGI's primary equity holders, recently infused an additional $0.75 million into the Debtors which was essentially used to pay down Key Bank's revolving credit line as it stepped down $1.0 million on July 1, 2010. In consideration of the Debtors' ongoing cash crunch and the need for breathing room to formulate and implement a restructuring plan or a sale, the Debtors came to the conclusion that filing for bankruptcy protection was in the best interests of the Debtors and their creditors.

11. In order for the Debtors to maintain and operate the Locations, the Debtors receive water, power, telephone, trash, internet and similar utility services from a number of utility companies (each a "Utility Company," and collectively, the "Utility Companies"). Given the importance of the services provided by the Utility Companies to the Debtors' business and the nature of the Debtors' business (production of ice cream and water-ice novelty products), it is crucial that the means of providing adequate "assurance of payment" to the Utility Companies, which provide utility services to the Debtors, be determined immediately so that there will be no interruption in the services provided.

12. Filed concurrently herewith as Exhibit "1" is a list which sets forth, on an account-by-account basis, the name and address of the Utility Company that is currently providing utility service to the Debtors, the total amount paid by the Debtors on such account during the past 12 months and the average monthly payment based on the total amount paid by the Debtors during the past 12 months. Exhibit "1" was created by me with the Debtors' Books and Records. I believe that Exhibit "1" is accurate in all material respects.

13. The Debtors intend to provide adequate "assurance of payment" by providing the Utility Companies with cash deposits, as authorized by Section 366(c)(1)(A)(i) of the Bankruptcy Code, in the amounts proposed in Exhibit "1." The total amount of the cash deposits proposed to be paid is $150,852. Generally, for each account that the Debtors have with a Utility Company, the Debtors are proposing to provide the Utility Company with a cash deposit in an amount equal to the average monthly payment based on payments made on the account during the past 12 months. In addition to paying the foregoing cash deposits, the Debtors will bring the Utility Companies current on all post-petition debts owed to such Utility Companies.

14. The source of the funds to be used to pay the cash deposits to the Utility Companies will be the Debtors' cash or operating revenue, which allegedly constitutes the cash collateral of the Bank. Concurrently herewith, the Debtors filed a motion for authority to use cash collateral. That motion, and the budget submitted therewith, includes a line-item for the utility deposits to be paid pursuant to this Motion. Based on the Debtors' cash on hand, current operations and cash flow, the payment of the cash deposits to the Utility Companies will not render the Debtors' bankruptcy estates administratively insolvent.

15. In consideration of the foregoing, I submit that good cause exists to grant the relief requested in the Motion..

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of July 2010, at Las Vegas, Nevada.

                                                /s/ Jennifer K. Loving
                                                JENNIFER K. LOVING