FILED

July 26, 2010

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0002805234

**9**

RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: rb@lnbyb.com; tma@lnbyb.com

Proposed Attorneys for Chapter 11 Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## (SACRAMENTO DIVISION)

| | |
|---|---|
| In re:<br><br>MATTERHORN GROUP, INC.,<br><br>       Debtor.<br>────────────────────<br>VITAFREZE FROZEN CONFECTIONS, INC.,<br><br>       Debtor.<br>────────────────────<br>DELUXE ICE CREAM COMPANY,<br><br>       Debtor.<br>────────────────────<br>☒ Affects ALL DEBTORS<br>☐ Affects only MATTERHORN GROUP, INC.<br>☐ Affects only VITAFREZE FROZEN<br>            CONFECTIONS, INC.<br>☐ Affects only DELUXE ICE CREAM COMPANY | [Proposed] Lead Case No. 10-39672 (MSM)<br>[Proposed] Jointly Administered with Case<br>Nos. 10-39664 (MSM), and 10-39670 (MSM)[1]<br><br>DC No. LNB-4<br><br>Chapter 11 Cases<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO PROVIDE ADEQUATE ASSURANCE OF PAYMENT TO UTILITY COMPANIES PURSUANT TO SECTION 366(c) OF THE BANKRUPTCY CODE**<br><br>Hearing:<br> Date:    TBD<br> Time:    TBD<br> Place:    Department A<br>          Judge Michael S. McManus<br>          Courtroom No. 28<br>          Floor No. 7<br>          Robert T. Matsui Courthouse<br>          501 I Street<br>          Sacramento, CA 95814 |

───────────────

[1] Motion for Joint Administration pending.

Case 10-39670    Filed 07/26/10    Doc 26

1    Matterhorn Group, Inc. ("MGI"), Vitafreze Frozen Confections, Inc. ("Vitafreze"), and

2    Deluxe Ice Cream Company ("Deluxe"), the debtors and debtors in possession in the above-

3    captioned (proposed) jointly administered Chapter 11 bankruptcy cases (collectively, the

4    "Debtors"), hereby file their Memorandum of Points and Authorities in support of their motion

5    (the "Motion") for entry of an order authorizing the Debtors to provide adequate "assurance of

6    payment" to certain utility companies pursuant to Section 366(c) of the Bankruptcy Code.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

### A.    BACKGROUND.

On July 26, 2010 (the "Petition Date"), the Debtors each filed voluntary petitions under

Chapter 11 of 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").  The Debtors continue to

operate their business, manage their financial affairs, and operate their bankruptcy estates as

debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

MGI was formed in 2004 as a vehicle to "roll-up" frozen novelty manufacturing

companies in the Western United States.  The initial step in this strategy was MGI's acquisition of

Vitafreze, Deluxe, and Matterhorn Ice Cream Company ("Matterhorn"),[2] each of which became

wholly owned subsidiaries of MGI.  The Debtors share common senior management and prepare

consolidated financial statements.  As a result of these acquisitions, by 2005, the Debtors had (1)

established themselves as high-quality, high-service private label manufacturers with a strong

Western United States customer base, and (2) become one of the dominant producers of ice cream

novelties in the Western United States.

In 2006, in an effort to improve operations and profitability, MGI (1) closed Matterhorn's

manufacturing plant in Caldwell, Idaho and consolidated its manufacturing into Vitafreze, located

in Sacramento, California, and Deluxe, located in Salem, Oregon, and (2) took aggressive steps to

---

[2] Matterhorn is also a wholly owned subsidiary of MGI.  Matterhorn is not operating and has not filed a bankruptcy case.

MEMORANDUM ON
UTILITIES MOTION

restructure its remaining operations to reduce overhead and reposition MGI with its customers and suppliers. The Debtors' administrative office is located in Las Vegas, Nevada. The manufacturing facilities and administrative are collectively referred to herein as the "Locations."

At present, the Debtors, which have approximately 31 non-union employees and 226 union employees, are collectively one of the largest independent producers of ice cream and water-ice novelty products in the United States. The Debtors manufacture (1) self-branded products for grocery retailers, (2) products from brand licenses held by the Debtors, such as Mike and Ike™, HotTamales™, Zours™, and Crystal Light™ popsicles, (3) co-branded products, and (4) the Debtors' own products, including the Debtor's Oh My! Goodness™ branded products. The Debtors' customers include the largest big-box grocery retailers, club stores, and independent cooperative distribution companies in the United States, such as Wal*Mart, Sam's Club, Giant Eagle, Kroger, Stater Brothers, Albertsons, Winco Foods, Raley's, Save Mart Supermarkets, Safeway, Smart & Final, the Schwan Food Company, and Western Family. The Debtors also sell to various retailers in Mexico.

## B.    THE DEBTORS' SECURED DEBT.

The Debtors' primary secured creditor is Key Bank, N.A. (the "Bank"). As of the Petition Date, pursuant to that certain Amended and Restated Revolving Credit and Term Loan Agreement (as amended) (the "Loan Documents"), the Debtors owed the Bank approximately $1,249,983 on a term loan (the "Term Loan") and approximately $9,314,954 on a revolving line of credit (the "Line" and together with the Term Loan, the "Bank Loans") for a total of approximately $10,564,937. The Bank Loans are allegedly secured by first priority liens on substantially all of the Debtors' assets, including the Debtors' cash collateral. Under the Loan Documents, (1) the amount available under the Line is based on 80% of eligible accounts receivable and 60% of eligible inventory, subject to periodic step downs in total maximum availability, which is currently $9.5 million, and (2) the Bank Loans mature on July 1, 2011.

In addition to the Bank, the UCC-1 lien reports obtained by the Debtors from Idaho, the state in which the Debtors are incorporated, indicate that additional other entities (the "Other

Case 10-39670    Filed 07/26/10    Doc 26

Secured Parties") may have liens upon certain of the Debtors' assets. Based on a review of the UCC Reports, the Debtors believe that the liens of the Other Secured Parties only relate to particular equipment leased or purchased by the Debtors. Therefore, the Debtors do not believe that the liens of the Other Secured Parties extend to the Debtors' cash collateral.

## C.    <u>THE NECESSITY FOR FILING BANKRUPTCY.</u>

During the period of 2007 through 2009, the Debtors gross revenues increased substantially from approximately $42,564,029 in 2007, to approximately $47,986,399 in 2008, to approximately $54,436,328 in 2009. Unfortunately, due to expansion into new product categories, increased costs related thereto, a delayed selling season due to unusually cool temperatures in the Debtors geographical market and the continued need to make capital expenditures to maintain the Debtors' manufacturing facilities, these increases in gross revenue did not result in corresponding increases in net income and liquidity. Instead, based on the foregoing and seasonal fluctuations in the Debtors' business and borrowing limits under the Loan Documents, the Debtors found themselves in a cash crunch and were unable to meet their funding needs solely from advances made by the Bank. As a result, Pacific Mezzanine Fund, L.P. and CC&B Holdings, Inc., two of MGI's primary equity holders, recently infused an additional $0.75 million into the Debtors which was essentially used to pay down Key Bank's revolving credit line as it stepped down $1.0 million on July 1, 2010. In consideration of the Debtors' ongoing cash crunch and the need for breathing room to formulate and implement a restructuring plan or a sale, the Debtors came to the conclusion that filing for bankruptcy protection was in the best interests of the Debtors and their creditors.

## D.    <u>THE UTILITY COMPANIES AND THE SOURCE OF THE PROPOSED DEPOSITS.</u>

In order for the Debtors to maintain and operate the Locations, the Debtors receive water, power, telephone, trash, internet and similar utility services from a number of utility companies (each a "Utility Company," and collectively, the "Utility Companies"). Given the importance of the services provided by the Utility Companies to the Debtors' business and the

Case 10-39670   Filed 07/26/10   Doc 26

nature of the Debtors' business (production of ice cream and water-ice novelty products), it is crucial that the means of providing adequate "assurance of payment" to the Utility Companies, which provide utility services to the Debtors, be determined immediately so that there will be no interruption in the services provided.

Filed concurrently herewith as Exhibit "1" is a list which sets forth, on an account-by-account basis, the name and address of the Utility Company that is currently providing utility service to the Debtors, the total amount paid by the Debtors on such account during the past 12 months and the average monthly payment based on the total amount paid by the Debtors during the past 12 months.

The Debtors intend to provide adequate "assurance of payment" by providing the Utility Companies with cash deposits, as authorized by Section 366(c)(1)(A)(i) of the Bankruptcy Code, in the amounts proposed in Exhibit "1." The total amount of the cash deposits proposed to be paid is $150,852. Generally, for each account that the Debtors have with a Utility Company, the Debtors are proposing to provide the Utility Company with a cash deposit in an amount equal to the average monthly payment based on payments made on the account during the past 12 months. In addition to paying the foregoing cash deposits, the Debtors will bring the Utility Companies current on all post-petition debts owed to such Utility Companies.

The source of the funds to be used to pay the cash deposits to the Utility Companies will be the Debtors' cash or operating revenue, which allegedly constitutes the cash collateral of the Bank. Concurrently herewith, the Debtors filed a motion for authority to use cash collateral. That motion, and the budget submitted therewith, includes a line-item for the utility deposits to be paid pursuant to this Motion. Based on the Debtors' cash on hand, current operations and cash flow, the payment of the cash deposits to the Utility Companies will not render the Debtors' bankruptcy estates administratively insolvent.

In consideration of the foregoing, the Debtors submit that good cause exists to grant the relief requested herein.

MEMORANDUM ON
                                      UTILITIES MOTION

## II.

## <u>DISCUSSION</u>

Section 366 of the Bankruptcy Code, as amended by The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") and applicable herein, provides, in pertinent part, as follows:

> (a) Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, . . . the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for services rendered before the order for relief was not paid when due.
> . . .
>
> (c)(2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor . . . adequate assurance of payment for the utility service that is satisfactory to the utility.
>
> (3)(A) On request of a party in interest[3] and after notice and a hearing, the court may order the modification of the amount of an assurance of payment under paragraph (2).

11 U.S.C. § 366.

Whether a utility is subject to an unreasonable risk of nonpayment must be determined from the facts and circumstances of each case.  See <u>Massachusetts Elec. Co. v. Keydata Corp. (In re Keydata Corp.)</u>, 12 B.R. 156, 158 (1st Cir. B.A.P. 1981).  Prior to the enactment of BAPCPA, where a debtor has, with few exceptions, timely paid its utility bills prior to the commencement of its chapter 11 case, the administrative expense priority provided in sections 503(b) and 507(a)(1) of the Bankruptcy Code often constituted adequate assurance of payment, and no deposit or other security was required.  See <u>Virginia Elec. & Power Co. v. Caldor, Inc.</u>, 117 F.3d 646, 651 (2d Cir. 1997); <u>see</u> <u>also</u> <u>Demp v. Philadelphia Elec. Co. (In re Demp)</u>, 22 B.R. 331, 332 (Bankr. E.D. Pa.

---

[3] The Debtors are a parties in interest.  11 U.S.C. § 1109(b).

MEMORANDUM ON
                 UTILITIES MOTION

**9**

1   1982).

2       Now, pursuant to the BAPCPA, the administrative expense priority provided by Sections

3   503(b) and 507(a)(1) of the Bankruptcy Code specifically is not a means of providing "assurance

4   of payment" under Section 366(c)(2) of the Bankruptcy Code.  11 U.S.C. § 366(c)(1)(B).  Instead,

5   a Chapter 11 debtor must provide "assurance of payment" pursuant to Section 366(c)(1)(A) of the

6   Bankruptcy Code, which states that "assurance of payment" means: a cash deposit, a letter of

7   credit, a certificate of deposit, a surety bond, a prepayment of utility consumption, or another

8   form of security that is mutually agreed on between the utility and the debtor.  11 U.S.C. §

9   366(c)(1)(A).

10      Based on the foregoing, during the first 30 days following the commencement of a

11  voluntary Chapter 11 bankruptcy case, a utility may not alter, refuse, or discontinue service to, or

12  discriminate against, a debtor solely on the basis of the commencement of the case or the failure

13  of the debtor to pay a pre-petition debt for utility services provided.  Following the foregoing 30-

14  day period, however, utility companies may alter, refuse or discontinue service if the debtor does

15  not furnish adequate "assurance of payment" of post-petition utility service obligations that is

16  satisfactory to the relevant utility.

17      Under Section 366(c) of the Bankruptcy Code, this Court has exclusive responsibility for

18  determining what constitutes adequate assurance of payment of post-petition utility charges and is

19  not bound by local or state regulations.  See, e.g., Begley v. Philadelphia Elec. Co. (In re Begley),

20  41 B.R. 402, 405-06 (Bankr. E.D. Pa. 1984), aff'd, 760 F.2d 46 (3d Cir. 1985) (pre-BAPCPA);

21  Marion Steel Co. v. Ohio Edison Co. (In re Marion Steel Co.), 35 B.R. 188, 195 (Bankr. D. Ohio

22  1983) (pre-BAPCPA case finding that determinations of adequate assurance under section 366 are

23  fully within the Court's discretion).

24      In this case, the Debtors intend to provide adequate "assurance of payment" by providing

25  the Utility Companies with cash deposits, as authorized by Section 366(c)(1)(A)(i) of the

26  Bankruptcy Code, in the amounts set forth in Exhibit "1" filed concurrently herewith.  The total

27  amount of the cash deposits proposed to be paid is $150,852.  As noted above, generally, for each

28

MEMORANDUM ON
                                                UTILITIES MOTION

account that the Debtors have with a Utility Company, the Debtors are proposing to provide the Utility Company with a cash deposit in an amount equal to the average monthly payment based on payments made on the account during the past 12 months. In addition to the foregoing, the Debtors will bring the foregoing Utility Companies current on all post-petition debts owed to such Utility Companies and will remain current with them.

The source of the funds to be used to pay the cash deposits to the Utility Companies will be the Debtors' cash or operating revenue. As discussed, the foregoing funds allegedly constitute the cash collateral of the Bank. The Debtors have sought to use such cash collateral pursuant to a concurrently filed motion. That motion, and the budget filed with it, provide for the payment of the deposits references herein. The Debtors do not believe that the Lenders will oppose the relief requested herein, as it served to maintain the Bank's alleged collateral. Based on the Debtors' cash on hand, current operations and cash flow, and the anticipated sale of the Debtors' assets, the payment of the cash deposits to the Utility Companies will not render the Debtors' bankruptcy estates administratively insolvent.

In consideration of the foregoing, the Debtors respectfully submits that good cause exists to grant the requested relief.

## III.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter an order ordering as follows:

1.     finding, among other things, that notice of the Motion was appropriate under the circumstances and complied with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules;

2.     granting the Motion in its entirety;

3.     authorizing the Debtors to provide adequate "assurance of payment" to the Utility Companies via cash deposits in the amounts set forth in Exhibit "1" filed concurrently herewith;

4.     deeming the cash deposits paid by the Debtors to the Utility Companies in the

**9**

1    amounts set forth in Exhibit "1" filed concurrently herewith as constituting adequate "assurance

2    of payment" pursuant to Section 366(c) of the Bankruptcy Code;

3          5.     requiring each Utility Company that receives a cash deposit under an order of the

4    Court granting this Motion to return such cash deposit to the Debtors within ten (10) business

5    days if, and when, the Utility Company's services are terminated by the Debtors;

6          6.     prohibiting each Utility Company that receives a cash deposit under an order of the

7    Court granting this Motion from applying such deposit to amounts owed by the Debtors to the

8    Utility Company for services provided before the Petition Date; and

9          7.     granting such other and further relief as the Court deems just and proper.

10   Date: July 26, 2010                  LEVENE, NEALE, BENDER, YOO

11                                      & BRILL L.L.P.

12                                      */s/ Ron Bender*

13                                      RON BENDER

14                                      TODD M. ARNOLD
                                        Proposed Attorneys for Chapter 11 Debtors
                                        and Debtors in Possession

15

16

17

18

19

20

21

22

23

24

25

26

27

28

            MEMORANDUM ON
UTILITIES MOTION