**FILED**
**February 16, 2012**
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0004072919

**13**

2  T. SCOTT BELDEN, CSB NO. 184387
   KALEB L. JUDY, CSB NO. 266909
3  KLEIN, DENATALE, GOLDNER,
      COOPER, ROSENLIEB & KIMBALL, LLP
4  4550 California Avenue, Second Floor
   Bakersfield, California 93309
5  Telephone: (661) 395-1000
   Facsimile: (661) 326-0418
6  E-Mail: sbelden@kleinlaw.com; kjudy@kleinlaw.com

7  Proposed Attorneys for Debtor

8

9              **UNITED STATES BANKRUPTCY COURT**

10       **EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

11

12  In re:                          Case No.  12-10694-B-11

13  MARKET 52, INC.                 Chapter  11

14             Debtor.              DC No.  KDG - 4

15                                  Date:      March 1, 2012
                                    Time:      9:00 a.m.
16                                  Place:     Bankruptcy Court, Dept B
                                               2500 Tulare Street, 5th Floor
17                                               Fresno, California
18                                  Judge:     Honorable W. Richard Lee

19

20

21  **DEBTOR'S MOTION FOR ORDER, PURSUANT TO 11 U.S.C. § 105(a),
    ESTABLISHING PROCEDURES FOR TREATMENT OF CLAIMS UNDER
    PERISHABLE AGRICULTURAL COMMODITIES ACT**

22

23  TO THE HONORABLE W. RICHARD LEE, UNITED STATES BANKRUPTCY JUDGE:

24         MARKET 52, INC. ("Debtor") moves the Bankruptcy Court for an Order Pursuant To

25  11 U.S.C. § 105(A) Establishing Procedures For Treatment Of Claims Pursuant To Perishable

26  Agricultural Commodities Act and represents as follows:

27

28

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

A.    **Introduction:**

Debtor's schedules reflect that approximately 40 of its creditors supplied it with perishable commodities.  Some of these creditors may have claims to the statutory trust created by the Perishable Agricultural Commodities Act of 1930, as amended ("PACA").  These claims would be entitled to payment, out of the trust assets, ahead of all other creditors[1].  As of the petition date, ten creditors had filed administrative actions against Debtor before the USDA.  Three creditors had filed civil actions to establish their claim to the PACA trust.  Debtor wants to establish a procedure to quickly and efficiently determine which creditors have preserved their rights to the PACA trust's assets.  Such a procedure would save these creditors, and the estate, from the expense and delay involved in establishing each creditor's entitlement to the PACA trust separately through stay relief motions and adversary proceedings.

B.    **Background and Facts:**

1.    Debtor filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code on January 27, 2012.  Debtor is authorized to continue to operate its business and manage its property as a debtor in possession.

2.    Debtor is a corporation with a principal place of business in Kings County, California.  Debtor's primary business is the purchase, processing, and re-sale of fresh produce, including grapes, blueberries, and other fruit.

3.    Debtor is a licensed dealer under PACA.  Debtor's primary source of income is generated by the sale of produce which is subject to PACA claims held by creditors.

4.    Since 2007, Debtor has tried to build a year-round (52-week) supply chain for berries with supplies coming from Chile, Argentina, and Mexico, in addition to domestic sourcing in California and the Pacific Northwest.  During its years of operations, Debtor supplied major food retailers, including Costco, Safeway, Raley's, Kroger, Trader Joes, and others.

---

[1] Debtor is not seeking a determination of the amount or value of PACA trust assets it is holding, if any.  That determination will be the subject of a later motion.

36P122402                                                    2

5.      As Debtor grew to accommodate the demands of its customers, advance its model as a supplier of year-round fresh produce and berries, and develop a cold storage business, Debtor experienced severe capital working capital shortfalls.   Debtor sustained a substantial loss in 2010 and thereafter turned to factoring its receivables to meet its operating needs.

6.      By the end of 2011, it was clear that Debtor had insufficient capital to meet operating needs and repay vendors, growers, and other creditors.   At that time, Debtor started aggressive efforts to market and sell its business to large national and international produce concerns.   At the same time, several of Debtor's creditors, including growers who had sold berry commodities to Debtor and were owed substantial sums of money, began pursuing legal action.  Debtor attempted to and did reach payment arrangements with several of these creditors, but in the end Debtor could not come up with sufficient funds to make the payments or even propose payments.

7.      It also became clear to Debtor that a sale of Debtor's assets would be more beneficial to its creditors if it took place within the context of a Chapter 11 case and accomplished pursuant to 11 U.S.C. Section 363.   To that end, Debtor engaged a consultant to assist it with the marketing and sale of the company and even prior to the bankruptcy case, was in dialog with several potential interested parties.

8.      Debtor believes that, in order to consummate a sale of its business under 363, it will need to determine and disclose the number and amount of its creditors who hold Valid PACA Claims, as defined below.

9.      Debtor believes its liabilities total approximately $9.7 million.  Of this amount, approximately 40 creditors, holding claims totaling approximately $4.1 million, are growers who supplied Debtor with fresh produce.  Debtor believes that some of these creditors may have preserved their rights to the PACA Trust.

**C.      Jurisdiction:**

10.      This court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b).  Venue is proper

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

1   pursuant to 28 U.S.C. §§ 1408 and 1409.  The court's jurisdiction to administer PACA claims

2   is further discussed in paragraph 16, below.

3       **D.    Relief Requested:**

4       11.    By this Motion, the Debtor seeks authority, pursuant to section 105(a) of the

5   Bankruptcy Code, to implement certain procedures (the "PACA Procedures") to address claims

6   subject to PACA brought by Debtor's unpaid creditors.

7                                       **PACA**

8       12.    Congress enacted PACA in 1930 to regulate the marketing and sale of

9   "perishable agricultural commodities."  The statute requires licensing of certain entities buying

10  and selling perishable agricultural commodities. *Id.* § 499c.  It also provides for a statutory trust

11  (the "PACA Trust") for the benefit of unpaid sellers of perishable agricultural commodities

12  consisting of a buyer's entire inventory of food or other assets derived from perishable

13  agricultural commodities, and any receivables or proceeds from the sale of such commodities

14  or products (the "PACA Trust Assets"). *Id.* § 499e(c)(2).  The PACA Trust is for the benefit of

15  all unpaid suppliers and sellers of perishable agricultural commodities until they receive full

16  payment of the sums owing in connection with the transaction. *Id.*

17      13.    PACA Trust Assets are preserved as a non-segregated floating trust and may be

18  commingled with non-PACA Trust Assets. 7 C.F.R. 46.46(b).  PACA Trust Assets are not

19  property of a debtor's estate, because the buyer debtor does not have an equitable interest in

20  them, but rather holds the assets for the benefit of the sellers. *See, e.g., In re Churchfield*, 277

21  B.R. 769, 776 Bankr. E.D.Cal. 2002.

22      14.    Therefore, the beneficiaries of the PACA Trust have priority over other creditors

23  with respect to the PACA Trust Assets, provided they give written notice of intent to preserve

24  the benefits of the PACA Trust in accordance with the statutory notice requirements, and are

25  entitled to prompt payment from the PACA Trust Assets. *See JC Produce, Inc. v. Paragon*

26  *Steakhouse Restaurants, Inc.*, 70 F.Supp.2d 1119, 1120 (E.D.Cal. 1999) *and* 7 C.F.R. 46.46(e)-

27  (f).  Failure to comply with the notice requirements results in the seller losing its priority status,

28  leaving it with a general unsecured claim against the debtor.

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

**Debtor is subject to PACA**

15.     PACA's application is limited to sales to commission merchants, brokers, and dealers. 7 U.S.C. § 499b. PACA defines "dealer" as "any person engaged in the business of buying or selling in wholesale or jobbing quantities . . . any perishable agricultural commodity…in interstate or foreign commerce…" *Id.* § 499a(b)(6). "Wholesale or jobbing quantities" means aggregate quantities of all types of produce totaling one ton or more in weight in any day shipped, received, or contracted to be shipped or received. 7 C.F.R. § 46.2(x). Debtor holds a PACA license and, even if unlicensed, would be subject to PACA since, at all relevant times, Debtor was engaged in the business of buying or selling produce in wholesale or jobbing quantities.

**The bankruptcy court has jurisdiction to administer PACA claims**

16.     This motion essentially asks the court to set a procedure to determine whether certain creditors have claims against Debtor or against the PACA Trust Assets held by Debtor. Although PACA Trust Assets held by a debtor are not part of the estate, the bankruptcy court still has jurisdiction to make determinations regarding those assets. *In re Southland + Keystone*, 132 B.R. 632, 638 (9th Cir.BAP (Cal.) 1991) ("…that PACA proceeds are not property of the estate does not mean the bankruptcy court does not have jurisdiction to make that determination."). Additionally, the bankruptcy court can preside over litigation regarding PACA. *Id.* at 638-39. Thus, the court has jurisdiction to hear and decide this matter.

**The PACA Procedures**

17.     The Debtor believes that about 40 of its creditors—holding approximately $4.1 million in claims—may assert rights to the PACA Trust Assets. Several of these creditors have brought lawsuits against Debtor under PACA, and others have instituted formal or informal administrative proceedings under PACA with the USDA. Each of these actions was stayed when Debtor filed its bankruptcy petition. Debtor wants to move forward rapidly with a sale of its business under 11 U.S.C. § 363 and anticipates that some of the funds generated by such a sale will be distributed to holders of valid PACA Claims. Thus, Debtor believes it is in the best

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

interests of its creditors and estate to quickly and efficiently determine which of its creditors preserved their rights to the PACA Trust Assets.

18.    The Debtor proposes the following PACA Procedures to facilitate the resolution of all of the PACA Claims in an orderly and efficient manner:

a.    **Every claimant must file proof of its PACA claim.**  Any creditor seeking the protection of a PACA Trust must demonstrate that it preserved its rights to the PACA Trust in accordance with the applicable PACA regulations.  It must do this by filing a Proof of Claim on official Form B10 in the Debtor's case.  On that form the creditor should note that the basis for the claim is "PACA trust".  Additionally the creditor must complete and attach the "Attachment to PACA Proof of Claim," a copy of which is attached hereto;

b.    **Required Contents of the PACA Proof of Claim.**  All PACA Proofs of Claim must set forth (i) the amount of the asserted PACA Claim, (ii) documentation, including invoices, receipts, bills of lading, and the like identifying the commodities, products, or other items for which the PACA Claim is being asserted, (iii) documentation demonstrating that the creditor has preserved its PACA Trust rights in accordance with PACA, including but not limited to any notices of intent to preserve PACA trust rights, disclosure language, or other documentation of compliance, and (iv) whether the creditor has filed any other claim against any Debtor with respect to the matters asserted in the PACA Claim;

c.    **Time for filing PACA Claims.**  All PACA Proofs of Claim must be filed within the bar date ordered by the court, which Debtor proposes as 35 days following entry of an order granting the relief requested in this Motion (that date is the "PACA Claims Bar Date.")  Any PACA Proof of Claim filed after that date will, to the extent otherwise allowed, be deemed a general unsecured claim against the Debtor.  The holder of that claim **will not** share in any distribution of PACA Trust Assets.

d.    **Debtor will give additional notice of the PACA Procedures.**  Within two business days after entry of an order granting the relief requested in this Motion, the Debtor shall serve on all potential PACA claimants a notice setting forth the PACA Procedures and the PACA Claims Bar Date and enclosing a blank copy of (i) Form B10 and (ii) the Attachment to PACA Proof of Claim form.

e.    **Debtor will make a report to the court and to all claimants.**  Within 30 days after the PACA Claims Bar Date, the Debtor shall file a report ("Report") with the Court listing the PACA Claims asserted that the Debtor believes are (i) valid (each such claim, a "Valid PACA Claim") and (ii) invalid.  The report shall also set forth any PACA Trust Assets being held by the Debtor, if known at that time.  Along with the Report, the Debtor shall file a Motion for Order Approving the Report, to be set for hearing on at least 28 days notice (that hearing is the "Hearing.") The Debtor shall serve the Report on the following parties: (i) the Office of the United States Trustee; (ii) the attorneys for any official

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

committee(s) appointed in this chapter 11 case; and (iii) all parties filing PACA Proofs of Claim;

f. **Parties may file objections to the Debtor's Report.** Any party in interest may file with the Court an objection ("Objection") to the Report's proposed treatment of a PACA Claim at least 14 days before the date of the Hearing (the "Objection Deadline"), and serve a copy of the Objection on (i) the attorneys for the Debtor, Klein, DeNatale, Goldner, et al., LLP, 4550 California Avenue, Second Floor, Bakersfield California 93309 (Attn: Kaleb L. Judy), and (ii)  if applicable, the holder of the objected-to PACA Claim, on or before the Objection Deadline;

g. **Treatment of Valid PACA Claims.** Each Valid PACA Claim as to which no Objection is timely filed shall be deemed a valid claim against the PACA Trust Assets without further order of the Court and shall be paid by the Debtor pro-rata out of any distribution of the PACA Trust Assets[2].  Every holder of a Valid PACA Claim will share pro-rata in all such distributions, up to the amount of its claim. Any holder of a Valid PACA Claim that accepts payment from the Debtor on account of its Valid PACA Claim shall be deemed to have waived, to the extent of the payment received, any and all claims, of any type, kind, or priority, against the Debtor, their assets and properties, and any funds or amounts held in trust by the Debtor, on account of or in connection with the Valid PACA Claim.  To the extent that a Valid PACA Claim is not paid in full from the PACA Trust Assets, it will have an unsecured claim for the amount of the deficiency.

h. **Treatment of invalid PACA Claims.**  Invalid PACA Claims will not be entitled to share in any distribution of the PACA Trust Assets. Each PACA Claim that is listed in the Report as invalid as to which no Objection is timely filed will be deemed, without further order of the Court, to not be entitled to share in any distribution of the PACA Trust Assets;

i. **Treatment of resolved disputed PACA Claims.**  Each PACA Claim in the Report as to which an Objection is timely filed and received and, which Objection is resolved by the parties, may be treated as a Valid PACA Claim in accordance with the parties' resolution of the Objection and order of the Court approving same; and

j. **Treatment of unresolved disputed PACA Claims.**  Each PACA Claim in the Report as to which an Objection is timely filed and received and which Objection cannot be settled by the parties, shall not be deemed valid or invalid except upon order of the Court.  In the event an unresolved disputed PACA Claim is held valid by the court the claimant will receive payment from the reserved funds outlined below.

k. **Distribution(s).**  Each holder of a Valid PACA Claim will be entitled to share pro-rata in any distribution of the PACA Trust Assets. The distribution to holders of Valid PACA Claims will occur only pursuant to order of the court after noticed motion.  Any distribution prior to resolution of all unresolved disputed PACA Claims will be in the amount

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

---

[2] Debtor believes there is a possibility that the total amount of the Valid PACA Claims will exceed the total of the PACA Trust Assets.  If so, each claimant will be entitled to receive a pro–rata share of the total.  See *Frio Ice. S.A. v. Sunfruit. Inc.*, 918 F.2d 154, 159 (11th Cir. 1990).

of the total PACA Trust Assets being held by the Debtor, less a reserve in the total amount that the unresolved disputed PACA Claims would be entitled to, if they were included pro-rata in the distribution. The Debtor anticipates that the distribution will occur shortly after the consummation of a sale of Debtor's business under 11 U.S.C. § 363.

19.    The Debtor proposes that, pending the conclusion of the PACA Procedures, a standstill be in effect, such that the parties claiming to be PACA Trust beneficiaries may not take action against any person, including without limitation Debtor and its officers and directors, to establish the validity and amount of, collect, or enforce their PACA Claims, including through the commencement of adversary proceedings, except pursuant to the PACA Procedures. Therefore, Debtor requests that the Court's order approving this procedure establish it as the sole procedure for resolving claims to PACA Trust Assets by any creditor of Debtor absent further relief from this Court.

### Implementation of the PACA Procedures Is in the Best Interests of the Debtor and its Estate and Creditors

20.    The Debtor submits that approval of the PACA Procedures is in accord with both the Bankruptcy Code and PACA and is within the Court's equitable powers under section 105(a) of the Bankruptcy Code. Section 105(a) provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

21.    As discussed above, the PACA Trust Assets do not constitute property of the Debtor's estate, and beneficiaries of a PACA Trust have priority over other creditors with respect to PACA Trust Assets. Accordingly, the PACA Procedures provide for the payment of Valid PACA Claims out of the PACA Trust Assets, after the Hearing on the Report. In addition, the PACA Procedures satisfy any due process concerns by providing interested parties with notice and an opportunity to object to the Debtor's designation of PACA Claims as valid or invalid in the Report filed with the Court.

22.    Further, implementation of the PACA Procedures likely will avoid the filing of numerous motions, contested matters, and adversary proceedings, including motions for relief from the automatic stay, which would unnecessarily require the Debtor to expend time and

KLEIN, DENATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

resources responding thereto.  The PACA Procedures will avoid this disruption and expense and provide a fair, orderly, and efficient mechanism to address PACA Claims.

23.    Finally, to the extent the Debtor's obligations under PACA are not satisfied, the Debtor's officers and directors may be subject to lawsuits during the pendency of these chapter 11 cases and to personal liability.  *See, e.g., J.J.R. Distrib. Corp. v. Sandler Bros.*, 645 F. Supp. 2d 25, 31 (D. Me. 2009) ("'a PACA trust [] imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier") (quoting *Hiller Cranberry Prods., Inc. v. Koplovsky*, 165 F.3d 1, 9 (1st Cir. 1999).  Any such lawsuit (and ensuing potential liability) would unduly distract the efforts of the Debtor and its officers and directors from the operation and management of the Debtor's business enterprise and the orderly pursuit of the Debtor's reorganization efforts. The PACA Procedures, by staying related lawsuits, will avoid these circumstances and the attendant adverse consequences.  Thus, the Debtor submits that the relief requested is fair, justified, and appropriate and should be granted.

WHEREFORE, Debtor prays that the Court enter an order as follows:

1.    Granting the *Motion by Debtor for Order Pursuant To 11 U.S.C. § 105(A) Establishing Procedures For Treatment Of Claims Pursuant To Perishable Agricultural Commodities Act*;

2.    Adopting the PACA Procedures noted above;

3.    Ordering a standstill of creditors' attempts to establish claims to the PACA trust, and any related actions against Debtor, its officers and directors, outside of the PACA Procedures; and

4.    For such other relief as the court deems just and proper.

Date: February 16 2012

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP

By _____
T. SCOTT BELDEN
KALEB JUDY,
Proposed Attorneys for Debtor

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

36P122402

9

Attachment to PACA Proof of Claim

1.  Claimant:

☐  is licensed by the USDA–PACA, and currently holds valid PACA license number _____, and was so validly licensed during the period applicable to the transactions which are the subject of this claim.

☐  is not licensed by the USDA-PACA, and was not so licensed during the period applicable to the transactions which are the subject of this claim.

2.  The sales transactions between Claimant and Debtor were based on the following payment term:

☐  Payment was due within ten (10) days after the day on which the produce was accepted as provided for in 7 C.F.R. §46.2(aa)(5).

☐  On _____ - day written payment terms from the date of *(check one)*:

|       ☐        |       ☐        |       ☐        |       ☐         |
| Shipment | Invoice | Delivery | Acceptance |

True and accurate copies of the written agreements, if any, providing for such payment terms are attached to this PACA Proof of Claim.

3.  Claimant sold and delivered perishable agricultural commodities (hereinafter "Produce") on credit to Debtor as described in a chart attached to this PACA Proof of Claim ("Trust Chart"). In each instance, the Produce was received and accepted by Debtor and no adjustments have been made on the invoice except as listed. True and accurate copies of all relevant invoices are attached to the Trust Chart. In the Trust Chart, the term "Invoice Number" refers to the invoice under which the commodity was sold to Debtor; "Date of Acceptance, Invoice or Shipment" refers to the date which begins the payment term between the parties; "Payment Due Date" refers to the date payment was due based upon the payment terms between the parties; If the claimant claims trust status by virtue of a notice included in the invoice, the "Date Notice Given" refers to the date of the invoice; if the claimant claims trust status by virtue

of a Notice of Intent to Preserve Trust Benefits (hereinafter "Trust Notice"), the "Date Notice Given" refers to the date the Trust Notice was served on Debtor, "Invoice Amount Due" refers to the amount owed and remaining unpaid, whether or not it qualifies for trust protection; and "PACA Trust Amount" refers to the amount owed and remaining unpaid qualifying for trust protection pursuant to the provisions of PACA.

       4.      Claimant preserved its PACA trust interest against Debtor:

          ☐   by including the statutorily required language on Claimant's invoice or other billing statement (7 U.S.C. §499e(c)(4)); or

          ☐   by serving Trust Notices upon Debtor (7 U.S.C. §499e(c)(3)).

       5.      On the invoice dates indicated on the Trust Chart and appearing on each of the invoices, each invoice was sent to Debtor via:

          ☐ US Mail          ☐ Facsimile

          ☐ Hand-Delivery     ☐ Other: _____

       6.      If Claimant sent separate Trust Notices to Debtor, on the Date Notice Given indicated on the Trust Chart, each Trust Notice was sent via:

          ☐ US Mail          ☐ Facsimile

          ☐ Hand-Delivery     ☐ Other: _____

       7.      Attached are true and accurate copies of all Trust Notices, if applicable, all unpaid invoices, bills of lading regarding delivery, and other evidence and documents which may be necessary or helpful for the just determination of this claim.

       8.      The total principal amount past due and unpaid from Debtor totals $_____, of which $_____qualifies for PACA trust protection.

9.      Claimant's invoices or other written agreement (check which statement is applicable):

        _____ include provision for interest/finance charge.

        _____ do NOT include provision for interest/finance charge.

        _____ include provision for the recovery of attorneys' fees.

        _____ do NOT include provision for recovery of attorneys' fees.

10.     As of the date of filing this PACA Proof of Claim, Claimant has accrued **contractual** interest at the rate of \_\_\_\_\_% per month totaling $_____ on the unpaid invoices.

11.     As of the date of filing this PACA Proof of Claim, Claimant has incurred **contractual** attorneys' fees and costs in the amount of $_____.

Case 12-10694    Filed 02/16/12    Doc 63

## In re Markea S2
## SAMPLE TRUST CHART

| Invoice Number | Date of Acceptance (or Invoice or Shipment) | Payment Due Date | Date Notice Given | Elapsed Days (between columns 3 and 4) | Invoice Amount Due | PACA Trust Amount (Principal) | No. Of Days Overdue (to 1/27/2012) | Accrued Interest ___ % | Trust Amount (Principal and Interest) |
|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
| TOTALS |  |  |  |  | $ | $ |  | $ | $ |
|  |  |  |  |  |  |  |  |  |  |